The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gregory M. Willis. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The employee-employer relationship existed between the parties at the time of the injury and all parties are subject to Chapter 97 of the North Carolina General Statutes.
2. The medical records of Dr. Ron Joyner, Dr. Robert Foreman and Dr. Gerald Truesdale are authentic and, if relevant, may be admitted in evidence.
3. The following is a list of all known exhibits plaintiff may offer at the hearing in this case:
 a. Any Industrial Commission pleadings in this action;
b. All medical reports concerning the employee;
c. Any exhibits offered by defendant.
4. The following is a list of all known exhibits defendant may offer at the hearing in this case:
 a. Any Industrial Commission pleadings in this action;
b. All medical reports concerning the employee;
 c. Plaintiff's responses to defendants' discovery;
d. Recorded statement of Yvonne Haas;
e. Any exhibits offered by defendant.
5. The following are names and addresses of the witnesses plaintiff may offer at the hearing of this case:
a. Ms. Yvonne Haas;
b. All witnesses listed by the defendant.
6. The following are the names and addresses of the witnesses defendant may offer at the hearing of this case:
a. Beth Mungo;
b. Witnesses listed by the plaintiff.
7. With respect to medical witnesses, the parties propose that all such testimony be taken by deposition. Parties further propose, as noted above, that a complete set of all medical records concerning the employee be stipulated into evidence, with each party reserving the right to take testimony by deposition of any physician desired.
8. Plaintiff contends that the issues to be tried by the Industrial Commission are as follows:
 a. Whether or not the plaintiff suffered an compensable injury arising from her employment by reason of repetitive motion on June 18, 1993;
 b. Whether the plaintiff was entitled to recover benefits for total or partial disability resulting from the injury to her left and right hands.
9. Defendant contends that the issues to be tried by the Industrial Commission are as follows:
 a. Whether the plaintiff suffered a compensable injury rising out of and in the course of her employment with Corporate Benefits Services;
 b. If the plaintiff has suffered an occupational disease was the last injurious exposure with an employer other than the defendant.
 c. What, if any, benefits are the plaintiff entitled to cover.
* * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 45 years old with a date of birth of 10 June 1949. For her medical history, plaintiff was a diabetic. Plaintiff was right-hand dominant. For her work history before working for the defendant, plaintiff had worked for Physicians Health Plan, where she processed medical bills. Plaintiff began working for defendant in December 1991 in a position as a Claims Adjuster, processing medical bills and claims. Plaintiff processed claims for Guilford Mills' employees. Plaintiff worked from 8:00 a.m. through 5:00 p.m., with a one-hour lunch break.
2. Between December 1991 and February 1993 plaintiff spent three days per week processing medical bills for Guilford Mills' employees and their dependents. Most of her time for these three days was spent entering the bills into a computer. In addition to this duty, plaintiff pulled medical files for each claim, reviewed bills for diagnoses, and answered telephone inquiries. When processing medical bills, plaintiff worked some overtime.
3. Between December 1991 and February 1993 plaintiff spent about two days per week processing workers' compensation claims for Guilford Mills' employees. Each of these days she would process approximately 150 claims and medical bills. This job involved similar duties of pulling files, reviewing reports of accident from supervisors, processing medical bills, and answering telephone inquiries. Most of her time would be spent entering data into a computer. When processing workers' compensation claims, plaintiff did not work overtime.
4. Beginning in February 1993 plaintiff's only job duties involved processing workers' compensation claims. Her duties continued to be mostly data entry on a computer. In addition, plaintiff performed customer services of arranging doctors appointments and communicating with company lawyers and nurses. On Tuesday afternoons plaintiff would do a "check run" when she would run checks and stuff envelopes.
5. Beginning in April 1993 plaintiff began to experience problems with her right hand and wrist. The problems included numbness of the right hand and muscle spasms up to the shoulder. Plaintiff reported these problems to her supervisors, and on 18 June 1993 the defendants referred plaintiff to Dr. Ron Joyner. Plaintiff reported problems of right wrist pain to Dr. Joyner, and the doctor diagnosed carpal tunnel syndrome. Dr. Joyner prescribed Advil and a wrist splint.
6. In August 1993 plaintiff's employment with defendant was terminated due to unacceptable performance. Plaintiff collected unemployment benefits while she searched for another job. In October 1993 plaintiff began to work as an assistant to an attorney. In this job, plaintiff would interview clients, open files, obtain medical records and coordinate hearing dates.
7. In February 1994, six months after plaintiff left defendant's employment and eight months after her previous examination by Dr. Joyner, plaintiff went to Dr. Robert Foreman, her family doctor, with complaints of right wrist problems. Dr. Foreman prescribed a wrist splint.
8. Three weeks later, March 1994, plaintiff's attorney referred her to Dr. Gerald Truesdale, a hand specialist. Dr. Truesdale ordered nerve conduction studies; and at the time of the nerve conduction studies, plaintiff suffered from mild carpal tunnel syndrome on the right. On 4 May 1994 Dr. Truesdale changed plaintiff's medications because her symptoms had persisted. On 29 July 1994 Dr. Truesdale performed injections on plaintiff's right wrist. Plaintiff improved after the injections.
9. In December 1994 Dr. Truesdale repeated nerve conduction studies. At this time plaintiff's carpal tunnel syndrome had become worse than it had been in March 1994. On 15 February 1995 plaintiff first reported problems with her left wrist, and Dr. Truesdale discussed surgery with plaintiff. The surgery was conducted on the right wrist on 28 March 1995, about three weeks after the hearing.
10. It was Dr. Truesdale's opinion that plaintiff's job duties with defendant were a significant cause of her development of carpal tunnel syndrome. The undersigned gives greater weight to the opinion of Dr. Truesdale that plaintiff's job duties were a significant cause of plaintiff's carpal tunnel syndrome.
11. The condition of plaintiff's carpal tunnel syndrome worsened after she left defendant's employment. Six months after leaving defendant's employment, plaintiff suffered from mild carpal tunnel syndrome on the right. Eighteen months after leaving defendant's employment, the carpal tunnel syndrome on the right had worsened, requiring surgery; and carpal tunnel syndrome had begun to appear on the left.
12. The issue of permanent partial disability will not be addressed at this time due to the fact that plaintiff has not been given a rating, if any is necessary.
13. Plaintiff's job with defendant-employer exposed her to an increased risk of developing the occupational disease, carpal tunnel syndrome, than members of the general public.
14. As the result of her occupational disease, carpal tunnel syndrome, plaintiff was unable to earn wages in her former job with defendant-employer or in any other employment from March 28, 1995 to May 1, 1995.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSION OF LAW
1. Plaintiff has proven that she suffers from an occupational disease which is peculiar to and characteristic of her employment with defendant-employer, and not an ordinary disease of life to which the general public is equally exposed outside of employment. N.C.G.S. § 97-53(13); Booker v. Duke Medical Center, 297 N.C. 458
(1979).
2. Plaintiff is entitled to temporary total disability benefits in the amount of $266.68 per week from March 28, 1995 to May 1, 1995. N.C.G.S. § 97-29.
3. Defendants are to pay all medical fees incurred or to be incurred by plaintiff as a result of plaintiff's carpal tunnel syndrome.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for workers' compensation benefits for an occupational disease is GRANTED.
2. Defendants shall pay temporary total disability from March 28, 1995 to May 1, 1995 at a rate of $266.68 per week. Said sum having accrued shall be paid in one lump sum.
3. Defendants shall pay all medical bills incurred or to be incurred by plaintiff as a result of plaintiff's carpal tunnel syndrome.
4. An attorney's fee of twenty-five percent is HEREBY APPROVED for plaintiff's counsel and shall be paid directly to him.
5. Defendants shall pay all costs.
* * * * * * * * * * *
ORDER
Defendants' motion to dismiss the appeal is DENIED.
FOR THE FULL COMMISSION
 S/ _____________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/ _______________ DIANNE C. SELLERS COMMISSIONER
CMV/cnp/mj 8/1/96